**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**J.A.,**

***Plaintiff*,**

**v.**

**Civil No.: 1:25-cv-04187-JRR**

**WICOMICO COUNTY, MARYLAND,**
***et al.*,**

***Defendants*.**

**MEMORANDUM OPINION**

Pending now before the court are Defendant Steven V. Abreu's Motion to Dismiss at ECF No. 12, the State of Maryland's Motion to Dismiss at ECF No. 13, Wicomico County, Maryland's Motion to Dismiss at ECF No. 14, and Sheriff Michael A. Lewis' Motion to Dismiss at ECF No. 15.[1, 2] The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, Defendant Abreu's Motion, the State's Motion, and Defendant Lewis' Motion will be denied, and the County's Motion will be granted.[3]

[1] Throughout this opinion, Defendant Wicomico County, Maryland, is referred to as the "County"; the State of Maryland as the "State"; Defendant Sheriff Michael A. Lewis as "Defendant Lewis" or "Sheriff"; and Defendant Steven V. Abreu as "Defendant Abreu" or "Deputy Sheriff."

[2] The court understands the State, County, and Sheriff Lewis in his official capacity to have abandoned their arguments as to claim splitting, *see* ECF No. 25 at p. 1; ECF No. 26 at p. 1; ECF No. 27 at p. 3, and that the State and Sheriff in his official capacity have abandoned their arguments as to Eleventh Amendment immunity and § 1983 liability, *see* ECF No. 25 at p. 1; ECF No. 27 at p. 3.

[3] The parties' briefing on the Motions has been unnecessarily burdensome and, as a result, has obscured the issues ripe for court review. Defendants have abandoned multiple arguments while adopting others in reply solely by incorporation by reference, and Plaintiff (perhaps understandably) has responded to same by way of her own incorporation by reference. By way of example, the State abandoned every argument raised in its Motion and then asserted two entirely new arguments in later briefing. These new arguments are not substantively briefed; rather, the State merely incorporates by reference arguments of the County. The result is a series of convoluted briefs, requiring the court cross-reference and cross-check multiple arguments across different motions papers in an attempt to understand what the parties intend to argue. The court has endeavored to do so as comprehensively as possible here. Nonetheless, the court alerts the parties to these issues to encourage counsel for all parties to be mindful of avoiding this circumstance going forward.

# I. BACKGROUND[4]

## A. Factual Allegations

Plaintiff J.A. brings this action against the County, the State, Sheriff Lewis (personally and in his official capacity as Wicomico County Sheriff), and Defendant Abreu (personally and in his official capacity as Wicomico County Deputy Sheriff), alleging violations of her federal and state constitutional rights and asserting related state law claims. (ECF No. 2; the "Complaint.")

### *1. About Defendant Lewis, Defendant Abreu, and Defendant Abreu's Employment*

At all times relevant, Defendant Lewis, having been elected by the residents of the County, served as Sheriff. (ECF No. 2 ¶ 5.) "Defendant Sheriff Lewis was responsible for hiring, training, supervising, retaining and terminating deputy sheriffs, including former Deputy Sheriff Abreu." *Id.* Plaintiff alleges that Defendant Lewis "had final policymaking authority for the operation/performance of the Wicomico County Sheriff's Office," and in "decisions involving hiring standards/practices/policies," including making "the deliberate choice to lower the Wicomico County Sheriff's Office hiring standards." *Id.* ¶¶ 5, 95, 98. Defendant Lewis' "primary role is to enforce the laws/regulations of the County, the State and the United States of America." *Id.* ¶ 5.

During the relevant period, Defendant Abreu was employed as a Wicomico County Deputy Sheriff. (ECF No. 2 ¶ 6.) "In 2022, [Defendant Lewis] made the decision to hire Defendant [Abreu] after Abreu had applied for a second time to serve as a deputy sheriff." *Id.* ¶ 9. While Defendant Abreu's application had previously been "terminated," Defendant Lewis "subsequently made the decision to hire Defendant Abreu when he applied a second time because the Sheriff needed 'warm bodies on patrol.'" *Id.* Defendant Lewis "said he was 'scraping the bottom of the

[4] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 2.) *See Byers v. Painter*, 173 F.4th 155, 158 (4th Cir. 2026).

barrel to get' any interested candidates to serve as a deputy sheriff." *Id.* Defendant Lewis explained:

> It's very difficult to recruit good quality candidates. So what do we find ourselves doing? Hiring people that didn't wow us during the interview. But we need warm bodies on patrol still in these vacancies that we have within our agencies. And inevitably, what does that do? It lowers our standards.

*Id.* ¶ 10. During Defendant Abreu's mandatory training with the Eastern Shore Criminal Justice Academy, "an instructor 'documented how Abreu inappropriately cupped and groped a female's breasts during a training exercise on holds.'" *Id.* ¶ 11. Defendant Lewis "was informed of Defendant Abreu's documented and inappropriate sexual cupping and groping of a female's breasts during his training."[5] *Id.* ¶ 12.

On August 25, 2022, with authorization of Defendant Lewis, Defendant Abreu began solo patrols (patrolling without a supervising officer). (ECF No. 2 ¶ 12.) Thereafter, Defendant Abreu engaged in multiple instances of misconduct. On one occasion (prior to Defendant Abreu's complained-of actions toward Plaintiff), a woman (not Plaintiff) complained to the Wicomico County Sheriff's Office that Defendant Abreu "made provocative remarks during a traffic stop" and "followed the woman to her house." *Id.* ¶ 15. "Defendant Abreu tried to cover-up his inappropriate sexual exchange with the woman by miscategorizing his body camera footage of the traffic stop in order to reduce the amount of time the footage is saved by the Wicomico County

---

[5] Pursuant to the well-settled pleading standards, the court accepts this allegation as true. The court does observe that the Fox News Digital article offered by the state (ECF No. 13-2), which the court declines to consider in ruling on the instant Motions as discussed at greater length below, states that, contrary to this allegation, Lewis did not have prior knowledge of the above-referenced academy training incident. *See* ECF No. 13-2 at p. 7. Nonetheless, where this claim is at odds with Plaintiff's allegations, the court takes Plaintiff's allegation to be true and properly brought in accordance with Federal Rule of Civil Procedure 11(b). *See* FED. R. CIV. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]").

Sheriff's Office." *Id.* ¶ 17. Despite having knowledge of these events, Defendant Lewis did not terminate Defendant Abreu's employment because Lewis "felt that the deputy would 'straighten out.'" *Id.* ¶ 18. Additionally, about a month before Defendant Abreu's actions toward Plaintiff, Defendant Lewis "learned that Defendant Abreu had allowed a friend at a hotel known to be embedded with illicit drugs drive [sic] his marked Wicomico County Sheriff's Office vehicle around the parking lot while the emergency lights and sirens were on." *Id.* ¶ 19. Finally, between September and October 2022, Defendant Abreu "committed numerous sexually tortious acts against several women while patrolling solo as a Wicomico County Deputy Sheriff." (ECF No. 2 ¶ 20.) On September 2 and 25, 2022, he raped women while on patrol. *Id.* On September 26, 27, and 30, 2022, and October 22, 2022, he committed other "misconduct in office" while on patrol. *Id.*

***2. Defendant Abreu's Actions toward Plaintiff***

At around 1:00 a.m. on October 26, 2022, Defendant Abreu, while on patrol and driving a marked Wicomico County Sheriff's Office vehicle, approached Plaintiff's parked vehicle as she sat in a parking lot outside her workplace. (ECF No. 2 ¶ 22.) Defendant Abreu, dressed in his Wicomico County Sheriff's Office uniform and armed with a gun, walked up to Plaintiff's vehicle and asked for her identification and phone number. *Id.* ¶ 23. He ordered Plaintiff to exit her vehicle and conducted a physical search of her body while grabbing her breasts and buttocks without her consent. *Id.* ¶¶ 24, 26. Defendant Abreu then directed Plaintiff back into her vehicle whereupon he leaned through her window, penetrated her vagina with his fingers, and grabbed her breasts without her consent. *Id.* ¶¶ 25–26. Defendant Abreu eventually ended Plaintiff's detainment and allowed her to leave. *Id.* ¶ 28. Sometime after the assault on October 26, 2022, Defendant Abreu called Plaintiff's phone and sent her text messages with sexual content. *Id.* ¶ 29.

On October 28, 2022, around 10:52 p.m., Defendant Abreu, again driving a marked Wicomico County Sheriff's Office vehicle and wearing his full uniform, turned on his emergency lights to execute a traffic stop of Plaintiff's vehicle. (ECF No. 2 ¶¶ 30–31.) After approaching her vehicle, Defendant Abreu grabbed and moved Plaintiff's face without her consent to check her neck for marks he saw during the previous encounter. *Id.* ¶ 31. Defendant Abreu then told Plaintiff that "he would see her again," and ordered her not to tell anyone about his interactions with her. *Id.* ¶ 33. The following day, Defendant Abreu, again driving his marked Wicomico County Sheriff's Office vehicle, was waiting in the parking lot of Plaintiff's employment but did not approach her because her fiancé was driving her. *Id.* ¶ 36.

On October 30, 2022, Defendant Abreu was arrested and criminally charged for his actions toward Plaintiff. (ECF No. 2 ¶ 38.) On December 6, 2024, Defendant Abreu was convicted of, *inter alia*, rape in the first and second degree, sexual offense in the third and fourth degree, sexual acts committed by law enforcement with a person in custody, and false imprisonment of Plaintiff. *Id.* ¶ 40. *See* Case No. C-22-CR-22-000588, Circuit Court for Wicomico County, Maryland.

**B. Relevant Procedural History**

On October 26, 2023, Plaintiff initiated an action in this court—*J.A. v. Abreu*, Case No. 23-2922-JRR ("*J.A. I*"). (Case No. 23-2922, ECF No. 1.) Like the instant action, *J.A. I* arose out of Defendant Abreu's unlawful actions toward Plaintiff, but that action was brought against Defendant Abreu and the County only. *Id.* The County subsequently moved to dismiss the *J.A. I* action against it, arguing, *inter alia*, that Defendant Abreu, as a deputy sheriff, was a State, not County, employee. (Case No. 23-2922, ECF No. 20.) The court granted the County's motion, holding, in accordance with the general rule under Maryland law, that Defendant Abreu—as a deputy sheriff—was a State, not a County, employee. (Case No. 23-2922, ECF Nos. 27, 28.) Shortly after the court's ruling, on Defendant Abreu's request, the court stayed *J.A.I* pending the

conclusion of his state court criminal trial. (Case No. 23-2922, ECF Nos. 29, 31.) About four months later, the court lifted the stay and, on January 16, 2025, Plaintiff moved for leave to file her First Amended Complaint. (Case No. 23-2922, ECF Nos. 35, 36.) The court granted Plaintiff's motion on May 2, 2025, rendering her First Amended Complaint the operative pleading in *J.A. I*. (Case No. 23-2922, ECF Nos. 39, 40.) The First Amended Complaint added the State as a Defendant and additional claims against Defendant Abreu. (Case No. 23-2922, ECF No. 40.) Plaintiff later voluntarily dismissed the State from *J.A. I* without prejudice before the court ruled on the State's motion to dismiss. (Case No. 23-2922, ECF Nos. 47–49.) *J.A. I* then finally entered discovery on July 24, 2025. (Case No. 23-2922, ECF No. 50.) Per the court's scheduling order in *J.A. I*, the deadline for any party to move to amend the pleadings was October 20, 2025. (Case No. 23-2922, ECF Nos. 50, 55.)

On October 24, 2025, Plaintiff initiated *J.A. v. Wicomico County, Maryland* ("*J.A. II*") in the Circuit Court for Wicomico County, Maryland. (ECF No. 1 at pp. 57; ECF No. 2.) The Complaint in *J.A. II* raises 11 counts:

> <u>Count I</u>: Constitutional Violations under 42 U.S.C. § 1983 against Defendant Abreu;
> <u>Count II</u>: Violation of Articles 24 and 26 of the Maryland Declaration of Rights against Defendant Abreu;
> <u>Count III</u>: Assault against Defendant Abreu;
> <u>Count IV</u>: Battery against Defendant Abreu;
> <u>Count V</u>: False Imprisonment against Defendant Abreu;
> <u>Count VI</u>: Intentional Infliction of Emotional Distress against Defendant Abreu;
> <u>Count VII</u>: Negligent Hiring, Training, and Retention against Defendants Lewis and the State;
> <u>Count VIII</u>: *Monell* Claim[6] against Defendant County;
> <u>Count IX</u>: *Longtin* Claim[7] against Defendants County and State;

---

[6] In *Monell v. Department of Social Services*, the Supreme Court explained that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 694 (1978). A *Monell* claim refers to a claim to hold a municipal entity liable under 42 U.S.C. § 1983.

[7] As discussed at greater length below, a *Longtin* claim is the state analogue to a *Monell* claim.

> Count X: Personal Supervisory Liability under 42 U.S.C. § 1983 against Defendant Lewis; and
> Count XI: Vicarious Liability against Defendants County and State.

(ECF No. 2 ¶¶ 41–128.) Plaintiff's claims against Defendant Abreu in *J.A. II* are substantively identical to those against him in *J.A. I*.

The State, County, and Defendant Lewis properly removed *J.A. II* to this court on December 18, 2025. (ECF No. 1.) Defendant Abreu consented to and "join[ed] in" the removal. *Id.* ¶ 7. The *J.A. II* Defendants then filed their respective Motions on January 16, 2026. (ECF Nos. 12, 13, 14, 15.) One day earlier, on January 15, 2026—and about a month before the close of discovery in *J.A. I*—Defendant Abreu filed a consent motion to stay *J.A. I* pending disposition of his instant Motion in *J.A. II*. (Case No. 23-2922, ECF No. 56.) The court granted that Motion on January 23, 2026, staying *J.A. I*. (Case No. 23-2922, ECF No. 57.)

The court now takes up Defendants' pending Motions in *J.A. II*. (ECF Nos. 12, 13, 14, 15.)

## II. LEGAL STANDARD[8]

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

---

[8] Because the parties have abandoned Eleventh Amendment immunity arguments, and the court will dismiss this action as against the County, it does not consider the related standards under Federal Rules of Civil Procedure 12(b)(1) and 42(b). The State did not move in the alterative to bifurcate any *Longtin* or vicarious liability claims against it.

*Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient.[9] *Twombly*, 550 U.S. at 555.

---

[9] The State (and no other Defendant) attaches to its Motion a copy of a Fox News Digital article cited throughout Plaintiff's Complaint. (ECF No. 2 ¶ 9, p. 5 n.3; ECF No. 13-2.) Preliminarily, the court notes the news article is erroneously cited in the Complaint as https://www.foxnews.com/us/maryland-cop-arrested-custody-kohls-lot-rape-allegedly-more-vistims-history-misconduct (misspelling "victims" as "vistims"), (ECF No. 2 at p. 5 n.3 and *passim*), instead of https://www.foxnews.com/us/maryland-cop-arrested-custody-kohls-lot-rape-allegedly-more-victims-history-misconduct. Regardless, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint. The court may, however, properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). The court is also entitled to "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits" as part of the "pleading for all purposes." *Goines v. Valley Comm. Svcs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); and then citing FED. R. CIV. P. 10(c)). It is undisputed that the Fox News Digital article is expressly cited throughout Plaintiff's Complaint. Nonetheless, where the State asks this court to draw additional factual allegations from same that Plaintiff has either not alleged or that contradict Plaintiff's allegations, such request is outside the scope of a Rule 12(b)(6) motion and the court declines to do so, especially where the article, at most, raises factual disputes rather than straightforward contradictions.

## III. ANALYSIS

First, the court considers Defendants Abreu and Lewis' arguments as to claim splitting. Second, the court turns to the County's argument that Defendants Abreu and Lewis are not County employees and thus do not present a basis for its liability here. Third, the court reviews the State's challenge to Plaintiff's *Longtin* claim against it. Finally, fourth, the court considers whether Plaintiff's claims are barred as against Defendant Lewis in his individual capacity based on various immunity doctrines.

### A. The Rule against Claim Splitting[10]

As referenced above, both Defendants Abreu and the Sheriff seek dismissal of the claims against them in *J.A. II* based on improper claim splitting.

Similar to the principle of res judicata, "[t]he rule against claim splitting 'prohibits a plaintiff from prosecuting [her] case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,* 273 F. App'x. 256, 265 (4th Cir. 2008)). "In a claim splitting case, the second suit will be barred if the claim involves the same parties and 'arises out of the same transaction or series of transactions as the first claim.'" *Sensormatic Sec. Corp.*, 273 F. App'x at 265 (citing *Trustmark Insur. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1269–70 (11th Cir. 2002)); *see Rahmani v. De La Pava*, No. 1:25-CV-1026 (RDA/LRV), 2025 WL 2017288, at *1 (E.D. Va. July 10, 2025), *aff'd,* No. 25-1818, 2025 WL 3082281 (4th Cir. Nov. 4, 2025) ("In general, the rule against claim splitting bars a second lawsuit: (i) that 'arises out of the same transaction or series of transactions' as a previous lawsuit; and (ii) that 'involves the same parties.'") (quoting *Sensormatic*, 273 F. App'x. at 265). The rule against claim splitting,

[10] "A motion to dismiss asserting a violation of the claim splitting doctrine is properly raised under FED. R. CIV. P. 12(b)(6)." *Brightview Grp., LP v. Glynn*, No. CV SAG-21-3027, 2022 WL 743937, at *6 (D. Md. Mar. 11, 2022).

"fosters judicial economy and protects parties from 'the vexation of concurrent litigation over the same subject matter.'" *Open Just. Baltimore v. Baltimore City L. Dep't*, No. CV ELH-22-1901, 2023 WL 5153654, at *17 (D. Md. Aug. 10, 2023), *aff'd,* No. 23-2293, 2024 WL 5182408 (4th Cir. Dec. 20, 2024) (quoting *Alston v. Experian Info. Sols., Inc.*, TDC-14-3957, 2016 WL 901249, at *3 (D. Md. Mar. 3, 2016), *aff'd*, 680 F. App'x 243 (4th Cir. 2017)).

***1. Defendant Abreu***

With regard to Defendant Abreu, there is no dispute that *J.A. II* arises out of the same transaction or series of transactions as *J.A. I* or that Defendant Abreu is a party in both actions. Indeed, Plaintiff's claims against Defendant Abreu in *J.A. I* appear substantively identical to those in *J.A. II*. *Compare* Case No. 25-4187, ECF No. 2 ¶¶ 42–78, *with* Case No. 23-2292, ECF No. 40 ¶¶ 26–62. Further, with the removal of *J.A. II*, both actions are presently pending before this court. In view of the foregoing, the general requirements of the rule against claim-splitting are met. That notwithstanding, Plaintiff contends that the claim splitting doctrine is inapplicable here because *J.A. II* was initiated in state court and that it is only Defendants' gamesmanship in removing the state court action that precipitated the issue. (ECF No. 18-1 at p. 2.) She also contends that she needed to initiate *J.A. II* in state court to file a single action against all Defendants. *Id.* at pp. 1–2. Neither argument is compelling.

As to Plaintiff's first argument, it is undisputed that all Defendants except Abreu properly removed *J.A. II* to this court. While "district courts in the Fourth Circuit have explicitly declined to apply the claim splitting doctrine when the duplicative suits are filed in federal and *state* court," *see Ayres v. Mercedes-Benz USA, LLC*, No. 3:25-CV-00096, 2026 WL 2076144, at *4 (W.D. Va. July 17, 2026) (emphasis in original) (collecting cases declining to apply claim splitting doctrine where parallel suits were pending in federal and state court) (citing *Ayala v. Wake Cnty., N.C.*, No. 5:24-cv-00524, 2025 WL 1522994, at *2 (E.D.N.C. May 28, 2025); *O'Dell v. CMH Homes, Inc.*,

No. 1:15-cv-00063, 2015 WL 4041302, at *3–4 (N.D.W. Va. July 1, 2015)), such a circumstance is not at issue here where there are not parallel federal and state proceedings. The same goes for the *Colorado River*[11] abstention doctrine (at issue in those cases), which Plaintiff appears to invoke. *See* ECF No. 18-1 at pp. 1–2; ECF No. 21-1 at p. 5.

Instead, this case was properly removed—by all Defendants other than Abreu[12]—and, now, both cases are pending in this court. Plaintiff cites no authority to support the inapplicability of the claim splitting doctrine where one of the pending cases was properly removed from state court. While the Fourth Circuit does not appear to have opined on this precise issue, the court observes that other circuits have affirmed dismissal on grounds of claim splitting where one of the actions at issue had properly been removed from state court. *See, e.g.*, *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 889 (9th Cir. 2022) (affirming dismissal for improper claim splitting where one action had been initiated in, and removed from, state court); *Rexing Quality Eggs v. Rembrandt Enters., Inc.*, 953 F.3d 998, 1001 (7th Cir. 2020) (same); *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 836 (11th Cir. 2017) (same); *Katz v. Gerardi*, 655 F.3d 1212, 1219 (10th Cir. 2011) (affirming dismissal for improper claim splitting after one action had been removed from state court and transferred to the same district court in which another action was pending). Accordingly, the court does not find the rule against claim splitting is inapplicable here solely because *J.A. II* was properly removed from state court.

Plaintiff next contends the rule against claim splitting is inapplicable because she was required to file in state court to file one action against all Defendants. (ECF No. 18-1 at pp. 2–3.) Plaintiff cites no authority to support that this rationale excludes a matter from the rule against

[11] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

[12] The court acknowledges Defendant Abreu consented to and joined in the removal, although the notice of removal was filed solely on behalf of the other Defendants.

claimsplitting, and the court has identified none. Accordingly, the court does not find the rule against claim splitting inapplicable solely because Plaintiff seemingly found it advantageous or efficient to pursue *J.A. II* to include all Defendants she pursues in a single action.

Based on the foregoing, the court concludes Plaintiff has violated the rule against claim splitting as to Defendant Abreu. The remaining issue, then, is the appropriate treatment of *J.A. II* as against Defendant Abreu. Defendant Abreu seeks dismissal, while Plaintiff argues for consolidation of *J.A. I* and *J.A. II*. Where the court finds the rule against claim splitting applies, the court may "stay the second suit, dismiss it without prejudice, or consolidate the two actions." *Mason v. Montgomery Cnty.*, No. PWG-13-1077, 2015 WL 3891808, at *3 (D. Md. June 23, 2015) (quoting *Hare v. Opryland Hospitality, LLC,* No. DKC–11–1439, 2011 WL 6153128, at *2 n. 3 (D. Md. Dec. 9, 2011)).

"In fashioning a remedy, courts balance the 'interests of judicial economy and avoiding vexatious litigation' against 'the plaintiff's interest in bringing the second suit.'" *Brightview Grp., LP v. Glynn*, No. CV SAG-21-3027, 2022 WL 743937, at *12 (D. Md. Mar. 11, 2022) (citation omitted). "Often, dismissal is appropriate where the plaintiff files a second suit after being denied leave to amend to add those claims to the first action." *Mason*, 2015 WL 3891808, at *3 (quoting *Chihota v. Fulton, Friedman & Gullace, LLP*, No. CIV. WDQ-12-0975, 2012 WL 6086860, at *2 n.18 (D. Md. Dec. 5, 2012)); *see Brightview*, 2022 WL 743937, at *12 (same). "In determining the appropriate recourse for a claim splitting violation, courts must also be mindful to 'protect[ ] litigants against gamesmanship.'" *Open Just.*, 2023 WL 5153654, at *17 (quoting *Airframe Systems, Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010)).

Because Plaintiff's claims against Defendant Abreu in *J.A. I* and *J.A. II* are substantively identical, and there is no dispute that both actions involve common questions of law and/or fact such that consolidation is proper, the determination of the proper disposition of the *J.A. II* claims

against Defendant Abreu is a purely academic exercise. Dismissal without prejudice of the *J.A. II* claims against Defendant Abreu would leave the same claims pending against Defendant Abreu in *J.A. I*; and, regardless, the two cases will be consolidated.[13] In addition, the facts here do not present a circumstance where Plaintiff pursued *J.A. II* after being denied leave to amend in *J.A. I.* And although the parties have engaged in some discovery in *J.A. I*, *J.A. I* is stayed pending resolution of Defendant Abreu's Motion and discovery remains ongoing. *See Mason*, 2015 WL 3891808, at *3 and *Brightview*, 2022 WL 743937, at *12, *supra*. Finally, given Plaintiff's reasoning for bringing *J.A. II* in state court as she did, the court is not persuaded that her piecemeal litigation efforts were intentional impermissible gamesmanship.

In view of the foregoing, and where all parties agree that *J.A. I* and *J.A. II* involve common questions of law and/or fact, the court will consolidate *J.A. I* and *J.A. II*. While the court agrees that Plaintiff's choice to pursue substantively identical claims against Defendant Abreu in *J.A. II* violates the rule against claim splitting, it will nonetheless deny the Motion on this basis because the court finds the appropriate remedy is consolidation not dismissal.

#### 2. *Defendant Lewis*[14]

As with Defendant Abreu, there is no dispute that Plaintiff's claims against Defendant Lewis in *J.A. II* arise out of the same transaction or series of transactions at issue in *J.A. I*. Unlike Defendant Abreu, however, Defendant Lewis was not made a party to *J.A. I*. As discussed above, the rule against claim splitting is at issue where the claims "involve[] the same parties or their

[13] While Defendant Abreu claims prejudice, *see* ECF No. 12-1 at pp. 9–10, for the reasons discussed above, it is unclear what prejudice he faces. Indeed, even if the court were to heed his request and dismiss these claims, Plaintiff's claims in *J.A. I* would proceed and be consolidated with the remaining claims in *J.A. II*.

[14] Based on Defendant Lewis' reply, the court understands claim splitting challenge to focus solely on Plaintiff's claims raised against him in his individual capacity. *See* ECF No. 27 at p. 3 ("Insofar as Plaintiff's claims against the Sheriff are in his official capacity, the Sheriff acknowledges that the claims against the State in the first case were dismissed without prejudice; therefore, the rule against claims splitting is inapplicable to claims against the State in the instant case and against the Sheriff as its agent.").

privies." *Sensormatic Sec. Corp.*, 452 F. Supp. 2d at 626; *see Fleming v. Bank of England*, No. 8:24-CV-01823-PX, 2025 WL 1707275, at *3 (D. Md. June 17, 2025), *reconsideration denied,* 2026 WL 1830895 (D. Md. June 25, 2026) (same). Upon the circumstances here, the court "appl[ies] settled privity law to determine whether a plaintiff to an initial suit, in filing a subsequent action, has run afoul of the claim splitting doctrine." *Brightview*, 2022 WL 743937, at *9 (quoting *Elbert v. Carter*, 903 F.3d 779, 784 (8th Cir. 2018) and collecting cases).

"In the res judicata context, '[p]rivity between parties exists when the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right.'" *Id.* (quoting *Nathan v. Takeda Pharms. Am., Inc.*, 546 F. App'x 176, 178 (4th Cir. 2013)). Privity in the context of claim splitting (as opposed to contract) "considers the closeness of relationship and legal interests between the parties in the first and second suits." *Id.* (citing *Meisner v. Zymogenetics, Inc*, No. 3:15-CV-3523-CMC, 2016 WL 4858741, at *4 (D.S.C. Sept. 15, 2016), *aff'd sub nom.*, 697 F. App'x 218 (4th Cir. 2017)). "Privity exists where a plaintiff attempts to relitigate the same claim by naming different governmental entities and employees as defendants." *Kayzakian v. Buck*, 865 F.2d 1258 (4th Cir. 1988) (first citing *Mears v. Town of Oxford, Md.,* 762 F.2d 368, 371 n.3 (4th Cir.1985); and then citing *Miller v. United States,* 438 F. Supp. 514, 520–21 (E.D. Pa. 1977)).

Defendant Lewis asserts in conclusory fashion that he "is in privity with the defendants in" *J.A. I*. (ECF No. 15-1 at p. 7.) He offers no substantive argument on this point. While it is true that privity may exist between government entities and their employees, as discussed above, Plaintiff's claims against Defendant Lewis are raised for the first time in *J.A. II* and concern claims against him in his individual capacity. Defendant Lewis' failure to advance argument as to how his interests are "precisely aligned" with the State (or County) in defending claims against him in his individual capacity is insufficient to meet his burden. Indeed, the claims against Defendant

Lewis in his individual capacity, and his arguments related thereto, are separate and distinct from the arguments raised by the State and County in *J.A. I* and *J.A. II*.[15] Moreover, even assuming Defendant Lewis is in privity with the State, the State was voluntarily dismissed without prejudice from *J.A. I* and thus not subject to the rule against claim splitting. It is unclear how Defendant Lewis may then invoke the rule against claim splitting when the State, with which he claims to be in privity, may not. *See Neal v. Frayer*, No. CV 24-0778-BAH, 2025 WL 621984, at *3 (D. Md. Feb. 26, 2025) (noting "dismissal of a prior lawsuit without prejudice does not bar the filing of a subsequent lawsuit based on the same facts and causes of action under the claim splitting doctrine") (quoting *Tripp v. Perdue Foods, LLC*, Civ. No. JMC-24-0987, 2024 WL 3904675, at *4 (D. Md. Aug. 22, 2024)).

In all, Defendant Lewis fails to show Plaintiff has violated the rule against claim splitting in *J.A. II* with regard to Plaintiff's claims raised against him in his individual capacity. The court will therefore deny his Motion on that basis.

**B. Defendant Abreu and Lewis as State Employees**

The County contends it cannot be held vicariously liable for actions (or inactions) of Defendant Abreu or Lewis because they are State, as opposed to County, employees.[16] (ECF No.

[15] Also curious, Defendant Lewis argues his interests are "precisely aligned" with the State and County defendants in *J.A. I,* but has filed a Motion separate from both the State and County in *J.A. II*, and advances arguments particular to his individual circumstance not at issue in the State and County Motions.

[16] Notwithstanding that the County advances this argument as to Plaintiff's vicarious liability claim under Count XI, the court understands it to seek dismissal of all claims against it based upon a finding that Defendants Abreu and Lewis are State, not County, employees. (ECF No. 14-1 at pp. 7–14.) To be sure, for Plaintiff to prevail in a *Monell* claim against the County, she must show an underlying constitutional violation by individual municipal actors at issue. As Judge Boardman reasoned:

> "In general, federal courts analyzing federal law claims against Maryland sheriffs follow [the Maryland Court of Appeals' decision in *Rucker v. Harford County*, 316 Md. 275, 558 A.2d 399 (Md. 1989)] in holding that the sheriff acts as a state official when exercising law enforcement functions." *Ledergerber v. Blubaugh*, No. JKB-20-1208, 2020 WL 7029868, at *4 (D. Md. Nov. 30, 2020); *accord S.D. v. Abreu*, No. JMC-25-2985, 2026 WL 376741, at *6 (D. Md. Feb. 11, 2026). As such, "[o]nly in unusual circumstances, such as when a sheriff acts as a local policy maker, can a county be subject to liability for his actions under *Monell*[.]"

14-1 at pp. 7–12.) As counsel are well-aware, the court previously opined on this issue as to Defendant Abreu in *J.A. I*, concluding that "Defendant Abreu was acting as an employee of the State, and not the County, at all relevant times." *J.A. v. Abreu*, No. 1:23-CV-02922-JRR, 2024 WL 3638023, at *5 (D. Md. Aug. 2, 2024).[17] Indeed, this court has had two occasions to address this issue as to Defendant Abreu—first, in *J.A. I*, and, second, in *S.D. v. Abreu*, No. 1:25-CV-2985-JMC, 2026 WL 376741 (D. Md. Feb. 11, 2026). In both decisions, consistent with the "well settled . . . general rule" under Maryland law that "county sheriffs and their deputies are 'officials and/or employees of the State of Maryland,' rather than their county," *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 726 (D. Md. 2013), this court held the plaintiff's claims for vicarious liability against the County failed because Defendant Abreu was not a County employee. *J.A.*, 2024 WL 3638023, at *5; *S.D.*, 2026 WL 376741, at *4.

As the court previously explained, "[a]s a matter of Maryland State law, it is well settled that, as a general rule, county sheriffs and their deputies are 'officials and/or employees of the State of Maryland,' rather than their county. Thus, for purposes of tort liability in Maryland, sheriffs and their deputies are generally considered State personnel." *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 726 (D. Md. 2013) (citing *Rucker v. Harford County,* 316 Md. 275, 281 (1989)); *see Peacock v. Debley*, 261 Md. App. 540, 556 (2024) (holding that "[u]nder Maryland

> *Ledergerber*, 2020 WL 7029868, at *4. Here, the Warrens' allegations against County sheriff's office personnel relate to their performance of law enforcement functions: searching their residence, taking reports, interrogating them, and bringing criminal charges. The Warrens do not allege any specific facts suggesting that the County sheriff's office personnel they name as defendants—Hall, Absher, and Bare—acted as local policy makers for the County in any respect. Thus, they have not plausibly alleged a *Monell* claim against the County.

*Warren v. St. Mary's Cnty.*, No. CV DLB-25-3937, 2026 WL 1980907, at *10 (D. Md. July 9, 2026) (same).

[17] The court will not restate here its full analysis of this issue, but rather refers the reader to *J.A. v. Abreu*, No. 1:23-CV-02922-JRR, 2024 WL 3638023, at *5 (D. Md. Aug. 2, 2024). The arguments in *J.A. I* concerned solely vicarious liability for underlying claims, as Plaintiff disclaimed any pattern or practice claim against the County. *Id.* at *6.

law, Sheriff[s] and Deputy Sheriffs . . . are officials and/or employees of the State of Maryland rather than of [a local jurisdiction]." (citations omitted)); *Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 651 (D. Md. 2004) (providing that "Maryland county sheriffs are also designated state constitutional officials for purposes of state law" (citing MD. CONST. ART. IV § 44)).

In *Rucker v. Harford County*, the Supreme Court of Maryland concluded that sheriffs and deputy sheriffs are State employees as a matter of law. 316 Md. at 281 (holding that "as a matter of Maryland law, the Sheriff and Deputy Sheriffs of Harford County are officials and/or employees of the State of Maryland rather than of Harford County"). "Indeed, this is confirmed by [the Maryland Tort Claims Act ('MTCA')]." *Peacock v. Debley*, 261 Md. App. 540, 556 (2024) (citing MD. CODE ANN., STATE GOV'T § 12-101) (identifying sheriffs and deputy sheriffs as "state personnel"). The State, and not the County, is therefore "answerable for [a deputy sheriff's] actions." *Brooks v. St. Charles Hotel Operating, LLC.*, No. CV DLB-23-0208, 2023 WL 6244612, at *8 (D. Md. Sept. 26, 2023) (quoting *Ledergerber v. Blubaugh*, No. JKB-20-1208, 2020 WL 7029868, at *4 (D. Md. Nov. 30, 2020)). *Rucker* did not, however, foreclose that "for some purposes and in some contexts," a sheriff may be treated as a county employee, such as in matters related to the local funding and benefits of sheriffs' offices. 316 Md. at 289. Further, its holding was limited to liability under Maryland law; the court expressly disclaimed determining "whether the Sheriff and Deputy Sheriffs are to be regarded as State or local government employees, for purposes of the Eleventh Amendment or 42 U.S.C. § 1983," as those are "federal law issues" that were not before it. *Id.* at 280–81 (citations omitted).

A few years after *Rucker*, the Fourth Circuit in *Dotson v. Chester,* considering county liability in a § 1983 claim, held that *Rucker* did not "compel the conclusion that the Sheriff, when managing the County Jail, is a state policymaker." 937 F.2d 920, 926 (4th Cir. 1991). Its conclusion as to county liability turned on whether the sheriff "had final policymaking authority

for the County over the County Jail." *Id.* at 924. The Fourth Circuit explained that "[t]he Sheriff's activities which we investigate—operating the County Jail which houses county prisoners, pursuant to county regulations, and funded by the County—differ from 'the statewide nature' of the Sheriff's duties involved in *Rucker.*" *Id.* at 927.

Nonetheless after *Dotson*, where "the events at issue involved the Sheriff's exercise of his authority as a law enforcement official," and not as a final policymaker as in *Dotson*, "federal courts analyzing federal law claims against Maryland sheriffs [generally] follow *Rucker* in holding that the sheriff acts as a state official when exercising law enforcement functions." *Ledergerber*, 2020 WL 7029868, at *4 (citing *Rossignol*, 321 F. Supp. 2d at 650–51). Indeed, as the court detailed in *J.A. I*, in actions alleging misconduct of law enforcement officers in performing their duties, this court has repeatedly dismissed county defendants on the basis that sheriffs and deputy sheriffs are employees of the State under Maryland law. *See, e.g.*, *Boas v. Graves*, No. CV TJS-22-0979, 2024 WL 1178186, at *7 (D. Md. Mar. 19, 2024); *Brooks v. St. Charles Hotel Operating, LLC.*, No. CV DLB-23-0208, 2023 WL 6244612, at *8–9 (D. Md. Sept. 26, 2023); *Collington v. Maryland*, No. GJH-20-966, 2021 WL 3172275, at *17 (D. Md. July 26, 2021); *Ledergerber v. Blubaugh*, No. CV JKB-20-1208, 2020 WL 7029868, at *4–5 (D. Md. Nov. 30, 2020); *Purnell v. Converse*, No. 1:21-CV-3202-JMC, 2022 WL 17552552, at *8 (D. Md. Dec. 9, 2022); *Sweitzer v. McGuinn*, No. CV GLR-17-1741, 2017 WL 4516711, at *4 n.13 (D. Md. Oct. 10, 2017); *McDonnell v. Hewitt-Angleberger*, No. CIV.A. WMN-11-3284, 2012 WL 1378636, at *4 (D. Md. Apr. 19, 2012).

Decisions following this court's opinion in *J.A. I* support this conclusion. *See, e.g.*, *Warren v. St. Mary's Cnty.*, No. CV DLB-25-3937, 2026 WL 1980907, at *10 (D. Md. July 9, 2026) (including a § 1983 claim); *Harford Cnty. Branch of the NAACP v. Gahler*, No. 1:26-CV-00239-JMC, 2026 WL 1719352, at *9 (D. Md. June 15, 2026) (including § 1983 claim); *Powell v. Harford*

*Cnty., Maryland*, No. 1:26-CV-00262-JMC, 2026 WL 1256045, at *6 (D. Md. May 7, 2026) (including § 1983 claim); *S.D. v. Abreu*, No. 1:25-CV-2985-JMC, 2026 WL 376741, at *4 (D. Md. Feb. 11, 2026) (including a § 1983 claim).

Plaintiff contends, however, that the above law is inapplicable because she plausibly alleges that Defendants Abreu and Lewis are employees of the County, urging that *Harried v. Maryland*, No. CV TDC-24-1190, 2024 WL 4817107 (D. Md. Nov. 18, 2024), is "instructive to the case at bar." (ECF No. 20-1 at pp. 6–8.) The *Harried* court considered whether Eleventh Amendment immunity, "which generally bars suits in federal court against a State," applied to the plaintiff's claim against the deputy sheriff in his official capacity under § 1983. 2024 WL 4817107, at *4. The court explained that "the question of whether a defendant is a state official or a county official for purposes of Eleventh Amendment immunity and a § 1983 claim is a matter of federal law, not state law." *Id.* (citing *Ram Ditta By & Through Ram Ditta v. Md. Nat'l Cap. Park & Plan. Comm'n*, 822 F.2d 456, 459–460 (4th Cir. 1987)); *see Harrison v. Berry*, No. CV 25-2958-TDC, 2026 WL 1354412, at *4 (D. Md. May 14, 2026) (same). To determine "whether an employee of a government agency is a state official for purposes of Eleventh Amendment immunity," the *Harried* court applied the Fourth Circuit's "four-part, nonexclusive test" enunciated in *Harter v. Vernon*, 101 F.3d 334 (4th Cir. 1996). *Id.* Those factors include: 1) most importantly, "whether the state treasury will be responsible for paying any judgment that might be awarded," 2) "whether the entity exercises a significant degree of autonomy from the state," 3) "whether it is involved with local versus statewide concerns," 4) "how it is treated as a matter of state law." *Harter*, 101 F.3d at 337 (quoting *Ram Ditta,* 822 F.2d at 457).

On a similar challenge raised by a plaintiff against Defendant Abreu in another case, Judge Coulson of this court noted that "[t]he question becomes whether the *immunity* analysis in *Harried* and *Harter* is applicable in the context of *vicarious liability*." *S.D.*, 2026 WL 376741, at *4

(emphasis in original). On the same argument advanced here, Judge Coulson found it is not. *Id.* Indeed, with regard to Defendant Abreu, the case is the same as assessed in the court's opinion in *J.A. I*; the claims at issue against Defendant Abreu do not concern local funding or benefits affecting the deputy sheriffs, *see Rucker*, 316 Md. at 289, or any policymaking authority Defendant Abreu may have held or exercised, *see Dotson*, 937 F.2d at 924.

With regard to Plaintiff's allegation that Defendant Lewis is a final policymaker for the County, "[t]o determine whether a government official is a local government official, as opposed to a State official, for purposes of § 1983, the court considers whether he is acting as a 'final policymaker[ ] for the local government in a particular area, or on a particular issue.'" *Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 687 (D. Md. 2018) (quoting *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 786 (1997)). Whether someone is a final policymaker is a question of state law. *Id.* (citing *McMillian*, 520 U.S. at 786); *see also Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 533–34 (4th Cir. 2022) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Courts "must look to the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Hunter*, 897 F.3d at 555 (quoting *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000)).

While Plaintiff does certainly allege that Defendant Lewis' final policymaking authority is at issue with regard to decisions concerning hiring, training, supervising, retaining, and terminating deputy sheriffs, "the common-law powers and duties of a sheriff," including the "duty to appoint, direct, and remove deputies . . . have been regulated somewhat by the General Assembly," *see Rucker*, 316 Md. at 290–91, with state law "establish[ing] the authority for hiring and discipline, including termination processes," *see Lane v. Anderson*, 660 F. App'x 185, 198 (4th Cir. 2016) (citing MD. CODE ANN., CTS. & JUD. PROC. § 2-309(d)(1)(viii), MD. CODE ANN., PUB. SAFETY § 3-108(d), and MD. CODE ANN., ST. PERS. & PENS. § 11-104). This is not like *Dotson,* where, upon

consideration of the relevant state (and local) law, the court concluded sheriffs "are final policymakers for counties when operating jails in charter counties." 937 F.2d at 928.

Accordingly, for the reasons discussed above, and consistent with the court's below analysis of the *Harter* factors, the court is not persuaded that Plaintiff alleges a situation here, as in *Dotson*, where examination of the state and county law support that Defendant Lewis possessed final policymaking authority for the County with regard to hiring, supervising, training, and disciplining deputy sheriffs. *See id.* Based on the foregoing, the court finds that Defendants Abreu and Lewis were acting as State, and not County, employees at all times relevant.[18]

Nevertheless, the court acknowledges the overlap between the issue presented and the Fourth Circuit's instruction in *Harter* on the test for Eleventh Amendment immunity for agents of the State. The court therefore considers the *Harter* factors; again, they include "whether the state treasury will be responsible for paying any judgment that might be awarded," "whether the entity exercises a significant degree of autonomy from the state," "whether it is involved with local versus statewide concerns," and "how it is treated as a matter of state law." *Harter*, 101 F.3d at 337 (quoting *Ram Ditta,* 822 F.2d at 457). Applying these factors, consistent with the court's analysis above, the court concludes Defendants Abreu and Lewis were acting as State, not County, employees.

---

[18] Notably, the Fourth Circuit's decision in *Dotson v. Chester* considered whether "the Sheriff possesse[d] final policymaking authority for the County in his operation of the County Jail, and the County can be held responsible for attorneys' fees and expenses arising out of his actions." 937 F.2d 920, 921 (4th Cir. 1991). It noted that, under § 1983, "[c]ounty liability for the Sheriff's operation of the County Jail depends on whether the Sheriff had final policymaking authority for the County over the County Jail." *Id.* at 924. The *Dotson* court did not conduct an analysis of the factors set forth in *Ram Ditta By & Through Ram Ditta v. Maryland Nat. Cap. Park & Plan. Comm'n*, 822 F.2d 456 (4th Cir. 1987), to determine whether an agency or employee constitutes an arm of the State for the purposes of the Eleventh Amendment immunity analysis, which is the source of the test that the Fourth Circuit discussed in *Harter v. Vernon*, 101 F.3d 334 (4th Cir. 1996). While not dispositive, that the Fourth Circuit did not consider the factors in *Ram Ditta* (and, by extension, *Harter*) offers additional support that the court need not employ the Eleventh Amendment immunity test for the purposes of determining liability.

The first factor has the court consider "whether the state treasury will be responsible for paying any judgment that might be awarded." *Id.* While it is true that "[MD. CODE ANN., STATE FIN. & PROC. § 9-108] assigns financial liability to the local jurisdiction when a sheriff or deputy sheriff is performing law enforcement functions," *see Peacock v. Debley*, 261 Md. App. 540, 557, *cert. denied,* 487 Md. 464 (2024); *see also* MD. CODE ANN., STATE GOV'T § 12-103.3,[19] this provision is read in the statutory context that sheriffs and deputy sheriffs are State personnel, *see* MD. CODE ANN., STATE GOV'T § 12-101(a)(6). Indeed, as this court previously explained, courts are in accord that provisions concerning obligations to defend and indemnify should not be read to answer questions of liability. *J.A. v. Abreu*, No. 1:23-CV-02922-JRR, 2024 WL 3638023, at *4 (D. Md. Aug. 2, 2024) (citing cases). *See Kleger v. Dorchester Cnty., Maryland*, No. 1:24-CV-00095-JMC, 2024 WL 3555044, at *6 (D. Md. July 23, 2024) (distinguishing obligations of municipal government to defend and indemnify and suits directly against municipal government); *Ledergerber*, 2020 WL 7029868, at *5 (dismissing plaintiff's claims against Harford County and noting dismissal of county as a defendant did not affect its obligations under § 9-108). On a similar question, the *S.D.* court did not find this factor to favor finding that Defendant Abreu acted as a County employee. As discussed above, and for the same reasoning in *S.D.*, the court is not persuaded the first factor weighs significantly in favor of either State or County employment where the question here is concerned with whether Defendants Abreu and Lewis are employees of the State as to liability—and not on the question of immunity.

---

[19] "In 2024, the General Assembly further addressed the issue by enacting § 12-103.3 of the State Government Article, which provides that, while the State is the proper named defendant for tort claims arising from sheriffs' or deputies' law enforcement or detention center functions, the county assumes liability for any judgment." *Penman v. Harford Cnty., Maryland*, No. 2182, Sept. term, 2024, 2026 WL 962246, at *8 (App. Ct. Md. Apr. 9, 2026), *cert. granted sub nom. Harford Cnty. v. Penman*, No. 86, SEPT. TERM, 2026, 2026 WL 2255202 (Md. July 17, 2026) (citing MD. CODE ANN., STATE GOV'T § 12-103.3 (2021 Repl. Vol. & 2025 Supp.)).

The second factor the court considers is "whether the entity exercises a significant degree of autonomy from the state." *Harter*, 101 F.3d at 337. Plaintiff argues she has alleged facts to show that "Sheriff Lewis and Wicomico County Sheriff's Office had local autonomy" because he "was elected by the residents of Wicomico County [and] the Wicomico County Sheriff's Office is funded by the [C]ounty."[20, 21] (ECF No. 20-1 at p. 7.) However, as in *S.D.*, such anemic assertions, alone, are overcome by "overwhelming support" to the contrary. *S.D.*, 2026 WL 376741, at *4.

The *Rucker* court explained:

> The common law office of sheriff is of ancient origin, and the elective office of sheriff has been provided for in Maryland's Constitutions since 1776. Under the current Constitution, Art. IV, § 44, mandates the election of a sheriff in each county and in Baltimore City. Section 44 establishes the term of office for sheriff and imposes age and residency requirements on those seeking the office. Furthermore, § 44 provides that the Governor shall appoint a replacement if a sheriff dies, resigns, or cannot serve out his term.

316 Md. at 285. It is Maryland State law, "rather than the local government," that "provides [the Sheriff] with his power." *Lane*, 660 F. App'x at 197–98 (citing MD. CONST. ART. IV, § 44). Under this provision of the Maryland Constitution, "the duties of the sheriffs are those prescribed by the common law, the enactments of the General Assembly, and the rules of the [Supreme Court of Maryland]." *Prince George's Cnty. v. Aluisi*, 354 Md. 422, 433 (1999). The duties of both sheriffs

---

[20] Plaintiff also alleges that Defendant Lewis is a final policymaker for the County. As discussed throughout, the court is not persuaded that Plaintiff's allegation supports a finding that Defendant Lewis is a final policymaker for the County in his hiring, supervising, training, and disciplining deputy sheriffs. *See Rucker v. Harford Cnty.*, 316 Md. 275, 290–91 (1989) (noting "the common-law powers and duties of a sheriff was the duty to appoint, direct, and remove deputies . . . have been regulated somewhat by the General Assembly"); *Lane v. Anderson*, 660 F. App'x 185, 198 (4th Cir. 2016) ("With respect to a sheriff's personnel decision-making authority, state law establishes the authority for hiring and discipline, including termination processes.") (citing MD. CODE ANN., CTS. & JUD. PROC. § 2–309(d)(1)(viii), MD. CODE ANN., PUB. SAFETY § 3–108(d), and MD. CODE ANN., ST. PERS. & PENS. § 11–104).

Additionally, as to Defendant Abreu in particular, there is no allegation he was elected by the people of the County or is a final policymaker.

[21] Indeed, the Supreme Court of Maryland has instructed that, although "the salaries and many of the expenses of the sheriffs' offices have been paid directly by the counties" since 1945, "the source of an agency's or official's funding is not dispositive of the agency's or official's status as a State government entity or local government entity." *Rucker v. Harford Cnty.*, 316 Md. 275, 282–83 (1989) (citation omitted).

and deputy sheriffs "are determined by state law, not locally enacted ordinances." *Id.* 354 Md. at 434 (citing *Rucker*, 316 Md. at 281–91). Additionally, with respect to "personnel decision-making authority, state law establishes the authority for hiring and discipline, including termination processes." *Lane*, 660 F. App'x at 198 (citing MD. CODE ANN., CTS. & JUD. PROC. § 2-309(d)(1)(viii), MD. CODE ANN., PUB. SAFETY § 3-108(d), and MD. CODE ANN., ST. PERS. & PENS. § 11-104). And while it is true that "[t]here is a degree of local control over the operation of the sheriff's office in each county," it remains the case that "county officials may not directly abridge the functions and duties of a sheriff under the common law and enactments of the General Assembly." *Rucker*, 316 Md. at 288. That authority rests with the General Assembly. *Id.*

Against the foregoing, the second factor supports the conclusion that Defendants Abreu and Lewis acted as State employees at all times relevant.

The court next considers the third factor—"whether [the entity] is involved with local versus statewide concerns." *Harter*, 101 F.3d at 337. While it is undoubtedly the case that the sheriffs and deputy sheriffs are involved in matters of local concern, *see id.* at 342, it is also beyond dispute that certain duties "prescribed for sheriffs are statewide in scope rather than confined to the locality in which they generally operate." *Rucker*, 316 Md. at 287; *see also id.* at 287–88 ("The control of the functions of the sheriffs by State common law, by the General Assembly and by the judiciary, coupled with the statewide nature of many of the sheriffs' duties, strongly reinforce the view that sheriffs are State rather than local government officials."). For instance, the *Rucker* court explained:

> Under § 2–301 of the Courts and Judicial Proceedings Article, a sheriff is empowered to "serve papers in a county other than the county of which he is sheriff." Code (1957, 1988 Repl.Vol.), Art. 75, § 85, provides that State courts may issue process against individuals "directed to the sheriff of the county where such person may reside, and the sheriff shall serve and return such process as if issued by a court of his county." Also, § 2–404 of the Courts and

> Judicial Proceedings Article provides that the State's appellate courts "may direct the sheriff to attend the court or perform services for the court."

*Id.* at 287; *see Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 688 (D. Md. 2018) (discussing same).

Against the backdrop of the "the statewide nature of many of the sheriffs' duties," combined with the "control of the functions of the sheriffs by State common law, by the General Assembly and by the judiciary," the third factor weighs in favor of finding Defendants Abreu and Lewis are State employees. *See Rucker*, 316 Md. at 287–88, *supra*.

Finally, the court considers "how [the entity] is treated as a matter of state law." *Harter*, 101 F.3d at 337. On this point, and consistent with the court's foregoing analysis above (and in *J.A. I*), there does not appear to be any dispute that this factor favors a finding that Defendants Abreu and Lewis acted as State employees based on the allegations at issue here. Both statutory and caselaw authority support that sheriffs and deputy sheriffs are treated as State employees under Maryland law. *See, e.g.*, *Rucker*, 316 Md. at 281–291; MD. CODE ANN., STATE GOV'T § 12-101(a)(6). *See also Harford Cnty. Branch of the NAACP v. Gahler*, No. 1:26-CV-00239-JMC, 2026 WL 1719352, at *7–8 (D. Md. June 15, 2026) ("Maryland law treats sheriffs as state employees rather than County employees.") (collecting cases).

Upon consideration of the *Harter* factors, against the caselaw discussed above, Plaintiff's assertion that Defendants Abreu and Lewis were acting as County, as opposed to State, employees at all relevant times fails as a matter of law. This decision is in accord the observation in *Ledergerber* that, generally, "federal courts analyzing federal law claims against Maryland sheriffs follow *Rucker* in holding that the sheriff acts as a state official when exercising law enforcement functions." 2020 WL 7029868, at *4; *see Warren*, 2026 WL 1980907, at *10 (D. Md. July 9, 2026) (same).

The court will therefore grant the County's Motion and dismiss this action as against it, as Plaintiff's claims the County stem entirely from the actions of Defendants Abreu and Lewis.

**C. Count IX: *Longtin* Claim**

"[T]he Maryland Constitution recognizes a 'pattern or practice' claim as part of its protections of citizens against unconstitutional actions of local government and its employees." *Prince George's Cnty. v. Longtin*, 419 Md. 450, 500 (2011). Such a claim, referred to as a *Longtin* claim, is "[t]he state analogue to a *Monell* claim." *Palma v. Montgomery Cnty., Maryland*, 598 F. Supp. 3d 288, 297 n.5 (D. Md. 2022); *see Devi v. Prince George's Cnty.*, No. CV DKC 16-3790, 2017 WL 3592452, at *4 (D. Md. Aug. 21, 2017) ("Maryland, like the federal government, imposes liability on municipalities for widespread patterns or practices that cause constitutional injuries." (citations omitted)). This court routinely analyzes *Monell* and *Longtin* claims together. *See, e.g.*, *Talley v. Anne Arundel Cnty., Maryland*, No. CV RDB-21-347, 2021 WL 4244759, at *13–14 (D. Md. Sept. 17, 2021); *Grim v. Balt. Police Dep't*, No. CV ELH-18-3864, 2019 WL 5865561, at *26 (D. Md. Nov. 8, 2019); *Devi*, 2017 WL 3592452, at *4. The claims are distinct, however, in that "Maryland law imposes *respondeat superior* liability on municipalities for the State constitutional violations of its employees." *Grim*, 2019 WL 5865561, at *26. Both parties rely upon *Monell*-related authorities in support of their *Longtin* claim arguments; the court does so as well here.

The Appellate Court of Maryland recently held that "an unconstitutional pattern or practice claim—a *Longtin* claim—may be brought against the State." *State v. Young*, 265 Md. App. 1, 19, *cert. granted,* 491 Md. 629 (2025), and *rev'd in part, vacated in part,* 494 Md. 484 (2026). But the Supreme Court of Maryland recently reversed in part and remanded in part the Appellate Court's decision. *State v. Young*, 494 Md. 484 (2026). On whether a plaintiff may bring a *Longtin* claim against the State, the Supreme Court of Maryland explained:

> A *Longtin* claim alleges liability of a governmental entity for engaging in or allowing a pattern or practice of unconstitutional conduct by its employees. In *Longtin*, we held that plaintiffs may bring these claims against local governments. Here, the Appellate Court held that such a claim also may be brought against the State, but that Mr. Young had not presented sufficient evidence for the jury to find in his favor on that claim. As Mr. Young did not challenge the sufficiency holding, the issue of whether a *Longtin* claim against the State was viable is moot before this Court. Rather than allow Mr. Young's concession of the ultimate merits of his *Longtin* claim to effectively insulate from this Court's review the determination that such claims may be brought against the State, we will vacate the Appellate Court's opinion to the extent it addresses the viability of a *Longtin* claim against the State.

*Id.* at 497. Both Plaintiff and the State appear to be in agreement that such a claim may be brought against the State. *See* ECF No. 25 at p. 1; ECF No. 31 at p. 2. Additionally, no party filed a Notice of Supplemental Authority based on the Supreme Court of Maryland's reversal and vacatur. The court will therefore assume without deciding for purposes of the instant Motions that a *Longtin* claim may be brought against the State.

Considering Plaintiff's allegations and briefing on the Motions, the court understands Plaintiff to advance a *Longtin* pattern and practice claim against the State based on Defendant Lewis' actions taken as a final policymaker, based on Defendant Lewis' failure to supervise and discipline Defendant Abreu, and based on the State's failure to put a stop to or correct a widespread pattern of unconstitutional conduct, as well as based on theories of respondeat superior liability. (ECF No. 2 ¶¶ 103–109; ECF No. 20-1 at pp. 17–18; ECF No. 31 at pp. 2–3.)

***1. Pattern or Practice Based on Final Policymaker Actions and Failure to Supervise and Discipline***

As to Plaintiff's claim based on Defendant Lewis' status as a final policymaker, *see Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538, 554 (4th Cir. 2018) (recognizing, in the context of a *Monell* claim, that a "'governmental unit may create an official policy by making *a single decision* regarding a course of action in response to particular circumstances' so long as that

governmental unit possessed 'final authority to create official policy'") (emphasis in original) (citing *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999)), the State does not raise any challenge to Plaintiff's allegations in support of such a claim, nor does the County upon whose briefing the State relies.[22] Where Defendants have elected not to raise a challenge, the court will not assess the sufficiency of this aspect of her claim.

Additionally, for reasons discussed below, the court is satisfied Plaintiff plausibly states a *Longtin* pattern or practice claim based on Defendant Lewis' alleged failure to supervise and discipline Defendant Abreu. *See Shipley v. Disney*, No. CV SAG-21-3173, 2022 WL 2789076, at *8 (D. Md. July 15, 2022) ("Courts in this district have used the same standard—originally set forth by the Fourth Circuit in *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)—to analyze both *Monell* failure to supervise claims and personal capacity supervisory liability claims.").[23]

***2. Pattern or Practice based on Widespread Pattern of Unconstitutional Conduct***

In the *Monell* context, a plaintiff alleges a "custom by condonation" theory if "municipal policy makers fail[ed] to put a stop to or correct a widespread pattern of unconstitutional conduct." *Owens v. Balt. City State's Attys. Office,* 767 F.3d 379, 402 (4th Cir. 2014) (citations omitted) (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1389–90 (4th Cir. 1987)). To state a claim based on condonation, "[a] plaintiff must point to a persistent and widespread practice[] of municipal

---

[22] While the County opposes Plaintiff's *Monell* claim based on a final policymaker theory in its reply, its argument is based on Defendant Lewis being a State, not County, employee—an argument that is, of course, not persuasive on behalf of the State. Additionally, the County asserts in conclusory fashion that Plaintiff's allegations "also do not show that the Sheriff acted with deliberate indifference by not making changes to training or increasing supervisory measures against Abreu as a matter of law." (ECF No. 26 at p. 13.) The court elsewhere explains why this argument is not compelling; in any event, the court declines to consider a conclusory assertion unaccompanied by substantive argument supported by legal authority.

[23] A *Monell* failure to supervise claim turns on "whether the municipal defendant has adopted a widespread practice or custom of failing to supervise its officers," whereas a personal capacity supervisory liability claims turn on "whether an individual supervising defendant knew about, was deliberately indifferent to, and—through his or her inaction—caused the constitutional injury alleged." *Shipley v. Disney*, No. CV SAG-21-3173, 2022 WL 2789076, at *8 (D. Md. July 15, 2022).

officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens*, 767 F.3d at 402 (citation omitted). Again, the parties appear to concede for purposes of the Motion that this is applicable to State officials.

"To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only support [her] condonation claim with facts which, if true, 'state a claim to relief that is plausible on its face.'" *Jones v. Jordan*, No. CV GLR-16-2662, 2017 WL 4122795, at *9 (D. Md. Sept. 18, 2017) (quoting *Owens*, 767 F.3d at 403). "Both knowledge and indifference can be inferred from the 'extent' of employees' misconduct." *Owens*, 767 F.3d at 402–403 (quoting *Spell*, 824 F.2d at 1391). Importantly, "[s]poradic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Id.* at 403 (quoting *Spell*, 824 F.2d at 1387). Further, a policy or custom that gives rise to § 1983 liability will not "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). "Only when a municipality's conduct demonstrates a 'deliberate indifference' to the rights of its inhabitants can the conduct be properly thought of as a 'policy or custom'" sufficient for a *Monell* claim. *Nicholson v. Baltimore Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *8 (D. Md. Apr. 20, 2021) (quoting *Wellham*, 104 F.3d at 626).

By way of example, the Fourth Circuit in *Owens* concluded that the plaintiff's "brief, but non-conclusory" allegations were sufficient to allege a plausible pervasive practice of misconduct to support a *Monell* claim:

> In support of his claim, Owens alleges that "[r]eported and unreported cases from the period of time before and during the events complained of" establish that the BCPD had a custom, policy, or practice of knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions. He further alleges that "a number

> of motions were filed and granted during this time period that demonstrate that [the BCPD] maintained a custom, policy, or practice to allow this type of behavior either directly or . . . by condoning it, and/or knowingly turning a blind eye to it."

767 F.3d at 403. In contrast, however, this court has held, "[i]t is not enough to allege the instance at hand and infer that it is part of a broader practice." *Brent v. City of Cumberland Police Dep't*, No. CV JKB-22-1349, 2023 WL 2457591, at *10 (D. Md. Mar. 10, 2023) (citing *Walker v. Prince George's Cnty.*, 575 F.3d 426, 431 (4th Cir. 2009)). Allegation that a municipality's "constitutional violation is not a single isolated, accidental, or peculiar event but, rather, a regular occurrence" is likewise insufficient if such an allegation is unsupported by allegations of other similar incidents. *Krell v. Queen Anne's Cnty.*, No. CV JKB-18-637, 2018 WL 6523883, at *16 (D. Md. Dec. 12, 2018).

The court turns to Plaintiff's allegations here. In support of her *Longtin* claim based on an alleged widespread practice of unconstitutional conduct, Plaintiff alleges:

> 107. Defendants County and State, through Defendant Sheriff Lewis, established an unconstitutional pattern, practice and policy of allowing its law enforcement officers, including Defendant Abreu, to violate the state constitutional rights of the public, including the Plaintiff's state constitutional rights.
>
> 108. As a direct and proximate result of the unconstitutional customs, policies and practices of Defendants County and State, Defendant Abreu was permitted to deprive Plaintiff of her state constitutional rights by committing assault, battery, rape/sexual offense, false imprisonment and intentional infliction of emotional distress against the Plaintiff while on patrol as a deputy sheriff.

(ECF No. 2 ¶¶ 107–108.)

By Plaintiff's allegations, it is not apparent what the specific unconstitutional pattern, practice, or policy is, but only that the State allows officers to "violate state constitutional rights of the public." *Id.* ¶ 107. Even assuming such allegations pertain to sexual misconduct by officers, Plaintiff's allegations are lacking. To be sure, Plaintiff alleges Defendant Lewis' knowledge of

two prior sexual misconduct incidents,[24] but these alone are insufficient to allege a plausible "persistent and widespread practice[]" among deputy sheriffs (and/or other officials) committing sexual assaults or otherwise engaging in sexual misconduct of such duration and frequency to support a reasonable conclusion that Defendant Lewis had actual or constructive knowledge of, and failed to correct, the misconduct. *See Owens*, 767 F.3d at 402, *supra*. Plaintiff simply notes two incidents of inappropriate conduct by Defendant Abreu directed at women and then asks the court to infer a broader practice throughout the Sheriff's Office. *See Brent*, 2023 WL 2457591, at *10, *supra*. While the court appreciates the seriousness of these allegations, Plaintiff still must plausibly allege a widespread practice; Plaintiff's allegations simply do not do this.[25]

Accordingly, while the court agrees that Plaintiff has not plausibly alleged a *Longtin* pattern or practice claim based on a widespread practice of unconstitutional conduct through the Wicomico County Sheriff's Office, the court will nonetheless deny the Motion to the extent it seeks dismissal of Count IX because the *Longtin* claim will otherwise proceed on other bases set forth herein.

***3. Respondeat Superior Liability***

As discussed above, while "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978), a *Longtin* claim is distinct in that "Maryland's constitution requires more of its municipalities, and accordingly [the Supreme Court of Maryland] has declined to shield

---

[24] Plaintiff does not offer Defendant Abreu's other instances of sexual misconduct in September and October 2022 in support of her claims.

[25] To be clear, this court's opinion should not be read to state that allegations of two prior incidents of misconduct are always insufficient to support a plausible claim of a widespread unconstitutional practice. *See Jordan by Jordan v. Jackson*, 15 F.3d 333, 337 (4th Cir. 1994) ("[W]e disagree that appellants were required to allege more than one incident of misconduct in order to withstand a motion to dismiss under Rule 12(b)(6).") Instead, the court concludes only that Plaintiff's allegations here are insufficient to support a plausible claim that the Sheriff's Office had a widespread practice of unconstitutional conduct by officers, let alone a widespread practice of sexual assault by officers. *See* ECF No. 2 ¶ 107.

municipalities from the unconstitutional acts of its officials." *Prince George's Cnty. v. Longtin*, 419 Md. 450, 493 (2011). Accordingly, a municipality is liable under a theory of respondeat superior for constitutional violations committed by its officials. *Id.* at 493–94 (quoting *DiPino v. Davis*, 354 Md. 18, 51–52 (1999)). "Under the doctrine of respondeat superior, an employer is jointly and severally liable for the torts committed by an employee acting within the scope of his employment."[26] *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 671 (D. Md. 2021) (quoting *Jordan v. Western Distributing Co.*, 286 F. Supp. 2d 545, 548 (D. Md. 2003)).

The State does not offer any argument that it may not be subject to a *Longtin* claim based on a theory of respondeat superior liability as to Defendant Lewis. Its argument instead focuses on Defendant Abreu. The State urges that Defendant Abreu's conduct toward Plaintiff was outside the scope of his employment as a matter of law. Under Maryland law, a two-pronged test—the *Sawyer* test—is applied to determine "whether an employee acted within the scope of employment." *Id*. The first prong asks "whether the employee's actions 'were in furtherance of the employer's business[,]'"; and the second prong concerns "whether the employer 'authorized' the employee's actions." *Id.* (quoting *Sawyer v. Humphries*, 322 Md. 247, 255 (1991)); *see also Baltimore City Police Dep't v. Potts*, 468 Md. 265, 271 (2020). "In applying this test, there are few, if any, absolutes." *Sawyer*, 322 Md. at 255. The court "must engage in a case-specific analysis—*i.e.*, resolve the issue on a fact-intensive, case-by-case basis." *Potts*, 468 Md. at 306.

An employer "may be held liable for the intentional torts of [an employee] where the [employee]'s actions are within the scope and in furtherance of the [employer]'s business and the harm complained of was foreseeable." *Potts*, 468 Md. at 286 (quoting *Cox v. Prince George's*

[26] "[W]here government employees' actions have been at issue, [Maryland courts] have treated as synonymous the term 'scope of employment' within the [Local Government Tort Claims Act], the term 'scope of the public duties' within the [Maryland Tort Claims Act], and the term 'scope of employment' for purposes of the doctrine of *respondeat superior*." *Baltimore City Police Dep't v. Potts*, 468 Md. 265, 284–85 (2020).

*Cnty.*, 296 Md. 162, 171 (1983)). An employee's actions are outside the scope of employment where they are "personal, [ ] where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his [or her] own interests, even if during normal duty hours and at an authorized locality[.]" *Id.* at 290 (quoting *Sawyer*, 322 Md. at 256–57). Where an employee's conduct "'is unprovoked, highly unusual, and quite outrageous,' courts tend to hold 'that this in itself is sufficient to indicate that the motive was a purely personal one' and the conduct outside the scope of employment." *Sawyer*, 322 Md. at 257.

Particularly relevant here is the Supreme Court of Maryland's discussion in *Potts, supra*:

> In determining whether an employee acted within the scope of employment, a court must engage in a case-specific analysis—*i.e.*, resolve the issue on a fact-intensive, case-by-case basis. Indeed, within Maryland case law regarding scope of employment, "there are few, if any, absolutes." *Sawyer*, 322 Md. at 255, 587 A.2d at 471. Like the United States District Court for the Northern District of Alabama, though, we agree that it is evident that where an officer sexually assaults a suspect in custody, the officer does not act within the scope of employment, and where an officer uses excessive force, the officer may be acting within the scope of employment. *See Titan Indem.*, 39 F. Supp. 2d at 1342-43. Between these opposite ends of the spectrum, in Maryland, the constant is that the test enunciated by this Court in *Sawyer* is accepted as the framework for analyzing whether an officer acted within the scope of employment.

468 Md. at 306. This holding is consistent with the court's holding in *Wolfe v. Anne Arundel Cnty.*, 374 Md. 20 (2003), that "in raping the plaintiff, a county law enforcement officer acted outside the scope of employment." *Id.* at 293 (describing the *Wolfe* holding).

Based on Maryland law, this court has repeatedly found that an employee's sexual assault was outside the scope of employment and dismissed claims sounding in vicarious liability against the employer. *See, e.g.*, *Snyder v. Kavanakudy*, No. CV RDB-24-2141, 2025 WL 1940362, at *8 (D. Md. July 15, 2025) ("Sexual assaults committed by an employee are consistently found to be outside the scope of employment in Maryland."); *Doe v. Anne Arundel Cnty.*, No. 1:23-CV-03451-

JRR, 2025 WL 675059, at *16 (D. Md. Mar. 3, 2025) (noting that "where Plaintiff's theory of respondeat superior liability is based upon two employees' sexual assault conduct, such conduct is outside the scope of their employment based upon Maryland law"); *Doe v. Uber Techs., Inc.*, No. CV JKB-20-0370, 2021 WL 2382837, at *4 (D. Md. June 9, 2021) ("Courts applying Maryland law have consistently found that 'an employer is not vicariously liable for the torts of assault and battery based on sexual assaults by [an] employee as they are outside the scope of employment.'" (citing cases)); *Thomas v. Bet Sound-Stage Rest./BrettCo, Inc.*, 61 F. Supp. 2d 448, 454 (D. Md. 1999) ("[T]he Court finds that an employer cannot be held vicariously liable for sexual assaults committed by its employees or one it may have given apparent authority.").

Based on the foregoing, the court agrees that Defendant Abreu's actions on October 26, 2022, to sexually assault Plaintiff were outside the scope of his employment as a matter of law. Relatedly, Plaintiff offers no allegations to support that Defendant Abreu's conduct in calling and sending Plaintiff text messages of a sexual nature was within the scope of his employment. Indeed, the only allegation that captures whether the calls and texts were within the scope is Plaintiff's non-specific allegation that his conduct was generally "within the scope of employment." (ECF No. 2 ¶ 127.) Plaintiff's failure to offer facts to support a reasonable conclusion that Defendant Abreu's conduct in calling and texting her was within the scope of this employment renders the Complaint insufficient to support a reasonable conclusion that it was within the scope. Indeed, by way of example, Plaintiff does not allege that Defendant Abreu communicated with her on a department-issued cell phone, that he was on duty at the time of these communications, or that these communications included any reference, or pertained, to Defendant Abreu's role as a sheriff deputy. Thus, Plaintiff does not plausibly allege facts to support that these actions were taken within the scope of his employment.

However, the same deficiencies are not present as to allegations regarding Defendant Abreu's actions on October 28 and October 29, 2022. As to these allegations, the court agrees with Plaintiff that she plausibly alleges that Defendant Abreu's actions, including effecting a stop of Plaintiff's vehicle, questioning her, and touching her face (on October 28, 2022), and watching her from his police vehicle at her place of employment (on October 29, 2022), were within the scope of his employment. Unlike the October 26, 2022, incident, these incidents did not amount to sexual assault. They thus do not fall within the category of cases for which Maryland courts have found outside the scope of employment. *See Potts*, 468 Md. at 306. Plaintiff's claims similarly offer factual allegations to support that Defendant Abreu's action on October 28 and 29, 2022, were taken while he was on duty and exercising his authority by virtue of being a deputy sheriff. While the court appreciates that Defendant Abreu's motives certainly appear personal in nature, Plaintiff has nonetheless pled sufficient facts to support that Defendant Abreu's actions on October 28 and 29, 2022, were within the scope of his employment.

Accordingly, Defendant Abreu's alleged sexual assault conduct of October 26, 2022, and subsequent calls and texts to Plaintiff were outside the scope of his employment; however, Plaintiff plausibly alleges facts that support a reasonable conclusion that Defendant Abreu's conduct toward Plaintiff on October 28 and 29, 2022, was within the scope of his employment. The court will therefore deny the State's Motion to the extent it seeks dismissal of Plaintiff's *Longtin* claim (or vicarious liability claim) based on same.

**D. Claims against Defendant Lewis in his Individual Capacity**

Defendant Lewis seeks dismissal of all claims against him in his individual capacity based on federal qualified immunity (for Count X) and Maryland statutory and common law public official immunity (for Count VII). (ECF No. 15-1 at pp. 12–28.)

***1. Federal Qualified Immunity***

A government official sued in his individual capacity may invoke the protection afforded by qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "[O]ff[ials] are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "In the Fourth Circuit, we have a split burden of proof for the qualified-immunity defense," with the plaintiff bearing the burden on the first prong, and the official bearing the burden on the second prong. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). "The answer to both questions must be in the affirmative to defeat the offic[ial's] entitlement to immunity." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017), *as amended* (Aug. 22, 2017).

"Qualified immunity 'is an immunity from suit rather than a mere defense to liability,' and 'it is effectively lost if a case is erroneously permitted to go to trial.'" *Mook v. Hall*, 185 F.4th 456, 461 (2026) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Indeed, because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of

a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (quoting *Harlow*, 457 U.S. at 817). Accordingly, while "qualified immunity typically is best addressed at the summary judgment stage after the facts have been developed through discovery," *see Riddick v. Barber*, 109 F.4th 639, 650 n.5 (4th Cir. 2024) (citations omitted), dismissal pursuant to Rule 12(b)(6) is nevertheless appropriate "when the face of the complaint clearly reveals the existence of a meritorious" qualified immunity defense. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins,* 637 F.3d 503, 506 (4th Cir. 2011)). If the court determines that a government official took action that a reasonable official would have believed was lawful, the official is entitled to dismissal before discovery. *See Anderson*, 483 U.S. at 646 n.6, *supra*. Nonetheless, "when asserted at this early stage in the proceedings, 'the [qualified immunity] defense faces a formidable hurdle' and 'is usually not successful.'" *Owens v. Balt. City State's Atty's. Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).

Defendant Lewis urges that neither prong of the qualified immunity defense is met here because, essentially, (1) Plaintiff fails to plausibly allege a supervisory liability claim under § 1983, and (2) the unlawfulness of his conduct was not clearly established because a reasonable sheriff in Defendant Lewis' position could have believed his actions were not violative of Plaintiff's rights. (ECF No. 15-1 at pp. 22–28.)

a. Violation of Constitutional Right

The court considers first whether Plaintiff plausibly alleges that Defendant Lewis violated her constitutional rights—specifically under the Fourth and Fourteenth Amendment—in his alleged failure to supervise and discipline Defendant Abreu.[27]

[27] Defendant Lewis contends Plaintiff fails to identify the specific right that he allegedly violated. (ECF No. 15-1 at p. 22.) Reading Plaintiff's Complaint in its entirety, *see Dolgaleva v. Virginia Beach City Pub. Schs.*, 364 F. App'x

"At times, 'supervisory officials may be held liable . . . for the constitutional injuries inflicted by their subordinates.'" *Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). Supervisory liability under § 1983 "arises from the obligation of a supervisory law officer to insure that his subordinates act within the law." *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1031 (D. Md. 2019) (quoting *Randall v. Prince George's County, Maryland*, 302 F.3d 188, 203 (4th Cir. 2002)). "'If a supervisory law officer is deliberately indifferent to that responsibility, he then bears some culpability for illegal conduct by his subordinates,' and he may be held liable." *Campbell*, 972 F.3d at 398 (quoting *Randall*, 302 F.3d at 203). Such liability "is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict." *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). The court applies the same standard in analyzing *Monell* failure to supervise claims and personal capacity supervisory liability claims. *Shipley v. Disney*, No. CV SAG-21-3173, 2022 WL 2789076, at *8 (D. Md. July 15, 2022). The issue of supervisory liability "is ordinarily one of fact, not law." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368, 376 (4th Cir. 1984)).

To demonstrate such supervisory liability, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and

820, 825 (4th Cir. 2010) (noting "the court should evaluate the complaint in its entirety"), it is apparent that the constitutional rights at issue are Plaintiff's rights under the Fourth and Fourteenth Amendments. (ECF No. 2 ¶ 42.) *See also* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice.").

> (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Johnson v. Robinette*, 105 F.4th 99, 123 (4th Cir. 2024) (quoting *Shaw*, 13 F.3d at 799); *see Wilkins v. Upton*, 639 F. App'x 941, 945 (4th Cir. 2016) (same); *Randall*, 302 F.3d at 206 (4th Cir. 2002) (same); *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 552 (D. Md. 2021) (same).

The first element "requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257–58 (4th Cir. 2022) (quoting *Shaw*, 13 F.3d at 799). To demonstrate the second element, a "plaintiff typically must show a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* (quoting *Slakan*, 737 F.2d at 373). This places "a heavy burden of proof" on Plaintiff; "ordinarily, [she] cannot satisfy it 'by pointing to a single incident or isolated incidents.'" *Id.* at 258 (quoting *Slakan*, 737 F.2d at 373). "[A] supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities," and he cannot "reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan*, 737 F.2d at 373). Finally, as to the third prong, "[c]ausation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quoting *Slakan*, 737 F.2d at 376).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)). Ordinarily, "a single act or isolated incidents" are "insufficient to establish supervisory inaction upon which to

predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983); *see Campbell*, 972 F.3d at 398 (explaining that "ordinarily, the plaintiff cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." (citations omitted)). Therefore, failure to supervise generally gives rise to a § 1983 violation only "in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel." *Wellington*, 717 F.2d at 936.

Defendant Lewis argues specifically that "the three incidents involving Abreu of which Plaintiff alleges the Sheriff had actual or constructive knowledge" are insufficient to satisfy the first element as a matter of law. (ECF No. 15-1 at pp. 23–24.) He further asserts that his "response to his alleged actual and constructive knowledge of Abreu's three incidents was not so inadequate as to show 'deliberate indifference to or tacit authorization of' Abreu's conduct to satisfy the [second][28] element of supervisory liability." *Id.* at p. 24.

"Because the first two elements of supervisory liability are intertwined, the Court analyzes them together." *Shipley*, 2024 WL 4635459, at *15 (citing *Shaw*, 13 F.3d at 799 n.12). Plaintiff's allegations detail the alleged prior incidents of misconduct by Defendant Abreu, Defendant Lewis' awareness of same, Defendant Lewis allowing Defendant Abreu to remain on solo patrol despite the foregoing, Defendant Lewis' failure to suspend or fire Defendant Abreu despite the foregoing, and his failure to require Defendant Abreu undergo appropriate training upon learning of his misconduct. (ECF No. 2 ¶¶ 94–102.) The court is satisfied these allegations of Defendant Lewis' awareness of multiple incidents of Defendant's Abreu's misconduct, combined with the other

[28] Defendant Lewis refers here to the "third element of supervisory liability," however, read in context, the court understands his challenge to be to the second element. (ECF No. 15-1 at p. 24.)

allegations regarding Defendant Lewis' hiring of Defendant Abreu, are sufficient to allege a plausible claim of supervisory liability under § 1983. Plaintiff's allegations go beyond "broad, conclusory allegations regarding the general elements for supervisory liability," and instead are "specific allegations of [Defendant Lewis' conduct and state of mind." *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023) (citing *Iqbal*, 556 U.S. at 677).

Notably, neither case upon which Defendant Lewis relies concerns pleading sufficiency for supervisory liability claims. *See Slakan v. Porter*, 737 F.2d 368, 370 (4th Cir. 1984) (regarding a jury verdict challenge); *Wellington v. Daniels*, 717 F.2d 932, 934 (4th Cir. 1983) (same). Further, as Plaintiff notes, the supervisory liability claim in *Shaw* similarly concerned knowledge of at least three prior incidents of the allegedly unconstitutional conduct. *See Shaw*, 13 F.3d at 800.[29] While Plaintiff may well face a heavy burden in meeting her burden of proof, her allegations are sufficient at the current stage to state a plausible claim. In view of the foregoing, Plaintiff plausibly alleges a supervisory liability claim under §1983 as against Defendant Lewis. The court will deny Defendant Lewis' Motion on that basis.[30]

b. Unlawfulness as Clearly Established

The court next considers whether Plaintiff plausibly alleges that the unlawfulness of Defendant Lewis' conduct was clearly established at the relevant time such that a reasonable official would have understood his actions were violative of her rights.

[29] Defendant Lewis contends that *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), is not persuasive here because, there, the state trooper's other supervisors "were aware of a much greater number of instances of the state trooper using excessive force and trying to cover it up and other misconduct." (ECF No. 27 at p. 8.) The court is not persuaded that *Shaw* supports the conclusion that the level of knowledge alleged here is categorically insufficient as a matter of law.

[30] Defendant Lewis directs the court to Judge Coulson's decision in *S.D. v. Abreu.* The allegations in *S.D.* regarding Sheriff Lewis' knowledge are not analogous to the facts alleged here. No. 1:25-CV-2985-JMC, 2026 WL 376741, at *6 (D. Md. Feb. 11, 2026).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[31] *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson*, 483 U.S. at 640). "The unlawfulness of an official's conduct must be 'apparent in light of pre-existing law.'" *Nazario v. Gutierrez*, 103 F.4th 213, 230 (4th Cir. 2024) (quoting *Booker v. S.C. Dept. of Corrections*, 855 F.3d 533, 538 (4th Cir. 2017)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Benton v. Layton*, 139 F.4th 281, 292 (4th Cir. 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The court applies an "objective standard," thus analyzing "this prong from the perspective of a reasonable offic[ial]." *deWet v. Rollyson*, 157 F.4th 344, 349 (4th Cir. 2025) (quoting *Lewis v. Caraballo*, 98 F.4th 521, 534 (4th Cir. 2024)).

To determine whether a right is clearly established, the court first looks to "the appropriate level of specificity," and then to "cases of controlling authority in this jurisdiction . . . to determine whether a reasonable official would be on notice that his actions violate the law" at that time.[32] *Id.* (first quoting *Est. of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020); then quoting *Franklin v. City of Charlotte*, 64 F.4th 519, 534 (4th Cir. 2023)). The precedent need not concern the "exact conduct at issue," *see Merch v. Bauer*, 677 F.3d 656, 665–66 (4th Cir. 2012), or be "directly on point," *see Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021), for a right to be clearly established. Instead, "the existing authority must be such that the unlawfulness of the conduct is manifest." *Merch*, 677 F.3d at 665–66 (quoting *Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir. 1998)). The inquiry "must be undertaken in light of the specific context of the case,

[31] "The question of whether a right is clearly established is a question of law for the court to decide." *Ray v. Roane*, 948 F.3d 222, 228–29 (4th Cir. 2020) (citing *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992)).

[32] Of note, the Sheriff cites no controlling authority in support of his arguments on this point. (ECF No. 15-1 at pp. 25–27.)

not as a broad general proposition." *Rivas-Villegas*, 595 U.S. at 5–6 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Defendant Lewis does not dispute that, at the time of the incident at issue, it was clearly established that a deputy sheriff assaulting and raping an individual he has detained, or that a sheriff's deliberate indifference to such conduct of this sort, violates the detainee's constitutional rights, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (re supervisory liability); *Smith v. Ray*, 409 F. App'x 641, 649 (4th Cir. 2011) ("A sexual assault by a police officer clearly violates the security interests protected by the Fourth Amendment.") (citing *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001)). (ECF No. 27 at p. 11.) Instead, he challenges whether it was clearly established that a reasonable sheriff having the same knowledge as Defendant Lewis, and acting as he did, violated Plaintiff's rights. Accepting Plaintiff's allegations as true, the court is not persuaded that Plaintiff's Complaint "clearly reveals the existence of a meritorious" qualified immunity defense on this point. *See Occupy Columbia*, 738 F.3d at 116, *supra*. As discussed above, Plaintiff plausibly alleges that Defendant Lewis' response to knowledge of Defendant Abreu's unlawful conduct "was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices." *See Johnson*, 105 F.4th at 123, *supra*. The court is not persuaded that a reasonable sheriff with the same knowledge—*i.e.*, of Defendant Abreu's repeated instances of inappropriate sexual/personal contact with women—would have allowed Defendant Abreu to continue solo patrols, would have failed to provide targeted relevant training, and would have failed to suspend or fire Defendant Abreu pending investigation, especially against the backdrop of pre-existing concern that hiring Defendant Abreu was "scraping the bottom of the barrel," *see* ECF No. 2 ¶ 9. The court understands there are likely factual disputes about the foregoing, and Plaintiff will ultimately be required to prove the material facts; but on a Rule 12(b)(6) motion, the court is not adequately persuaded Defendant Lewis is entitled to qualified

immunity on the present allegations. Defendant Lewis of course remains free to raise his qualified immunity challenge on a full record at summary judgment.

***2. State Statutory and Common Law Public Official Immunity***

The MTCA provides that state personnel, including sheriffs, *see* MD. CODE ANN., STATE GOV'T § 12-101 (a)(6)(i), are immune from suit and "from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence . . . ." MD. CODE ANN., CTS. & JUD. PROC. ("CJP") § 5-522; MD CODE ANN., STATE GOV'T §§ 12-104, 12-105. "[S]tatutory immunity under the MTCA applies to both negligent and intentional torts." *Addison v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. CV ELH-25-846, 2026 WL 795610, at *28 (D. Md. Mar. 20, 2026) (citing *Lee v. Cline*, 384 Md. 245, 266 (2004)). Relatedly, "[c]ommon law public official immunity applies to "public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties." *Cooper v. Rodriguez*, 443 Md. 680, 713 (2015) (footnote omitted) (quoting *Houghton v. Forrest,* 412 Md. 578, 585 (2010)). If, however, "a public official's actions are grossly negligent," or acts with malice, "the public official is not entitled to common law public official immunity." *Id.* at 680; *see Gelin v. Maryland*, 132 F.4th 700, 710 (4th Cir. 2025) ("This Maryland doctrine protects (1) public officials who (2) act negligently and (3) without malice (4) while performing discretionary (that is, non-ministerial) duties.") (first citing *Cooper*, 443 Md. at 713; and then citing *D'Aoust v. Diamond*, 424 Md. 549, 586 (2012)).

Defendant Lewis contends that Plaintiff fails to plausibly allege gross negligence; therefore, her Count VII fails as a matter of law because he is entitled to immunity pursuant to CJP § 5-522(b) and common law public official immunity. (ECF No. 15-1 at pp. 12–17.) Gross negligence "is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard

of the consequences without the exertion of any effort to avoid them." *Anne Arundel Cnty. v. Reeves*, 474 Md. 46, 73 (2021). While "a fine line exists between allegations of negligence and gross negligence," *Stracke v. Est. of Butler*, 465 Md. 407, 420 (2019) (citation omitted), gross negligence is "something *more* than simple negligence, and likely more akin to reckless conduct." *Reeves*, 474 Md. at 73 (emphasis in original) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). "Gross negligence, like deliberate indifference, is rooted in intentionality." *Walker v. Heavener*, No. CV JKB-16-3136, 2019 WL 3017658, at *7 (D. Md. July 10, 2019). Ultimately, "[a] wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Stracke*, 465 Md. at 421 (quoting *Barbre*, 402 Md. at 187). "Hindsight is 20/20"; a "well-intended error" in judgment is not the same as "wanton and reckless disregard" for life. *Id.* at 426 (quoting *McCoy v. Hatmaker*, 135 Md. App. 693, 713 (2000)).

As the Supreme Court of Maryland explained:

> "Whether or not gross negligence exists necessarily depends on the facts and circumstances in each case[,]" and "is usually a question for the jury and is a question of law only when reasonable [people] could not differ as to the rational conclusion to be reached." *Romanesk v. Rose,* 248 Md. 420, 423, 237 A.2d 12, 14 (1968) (citations omitted). "Ordinarily, unless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a defendant's negligent conduct amounts to gross negligence." *Taylor v. Harford Cnty. Dep't of Social Servs.,* 384 Md. 213, 229, 862 A.2d 1026, 1034 (2004) (citation and internal quotation marks omitted).

*Cooper*, 443 Md. at 708–09.

The court is satisfied, notwithstanding Plaintiff's failure to label it properly,[33] Plaintiff plausibly alleges that Defendant Lewis acted with gross negligence in his hiring, training, and

[33] To be sure, the only reference to gross negligence as to Defendant Lewis is that he acted "without . . . gross negligence." (ECF No. 2 ¶ 127.) Nonetheless, the court understands Plaintiff's Complaint to raise alternative theories,

retention of Defendant Abreu. As discussed throughout this opinion, Defendant Lewis' alleged actions and omissions include awareness that his hiring Defendant Abreu was "scraping the bottom of the barrel," concession that Defendant Abreu was hired as result of lowering his hiring standards, knowledge of Defendant Abreu's sexually inappropriate conduct early in Defendant Abreu's employment, and allowing Defendant Abreu to continue solo patrols after reports of inappropriate conduct with a woman (as well as other abuses of his sheriff authority). By Plaintiff's allegations, Defendant Lewis seemingly took no action to correct Defendant Abreu's behavior and instead permitted him to continue on solo patrol. The court is satisfied these allegations are sufficient to plausibly allege that Defendant Lewis' actions (or inactions) were taken with "a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Reeves*, 474 Md. at 73. This is not a circumstance where, at the present stage, "the facts are so clear as to permit a conclusion as a matter of law." *Cooper*, 443 Md. at 708–709, *supra*.

The court will therefore deny Defendant Lewis' Motion to the extent he seeks dismissal of Count VII.

---

*see* FED. R. CIV. P. 8(d), and notwithstanding Plaintiff's inartful pleading, the court's task on the instant Motion is to focus on the sufficiency of the factual allegations, while drawing all reasonable inferences in her favor and construing her Complaint so as to do justice. As the Fourth Circuit has instructed:

> The Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014) (holding that § 1983 need not be specifically invoked to get damages for constitutional rights violations under § 1983). "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Factual plausibility pleading requires a higher standard, but for legal misstatements we are more forgiving. *See Johnson*, 574 U.S. at 12, 135 S.Ct. 346. Plaintiffs need not put a claim under a special heading, quote the statute, or use magic words to make out a claim. Courts should focus on the substance of the allegations to avoid making pleading a formalistic headache. *See Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 418 (4th Cir. 2014) (citing *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009)).

*Stanton v. Elliott*, 25 F.4th 227, 237–38 (4th Cir. 2022).

## IV. CONCLUSION

As set forth herein, by separate order, Defendant Abreu's Motion, the State's Motion, and Defendant Lewis' Motion will be denied, and the County's Motion will be granted.[34] By separate order, the court will consolidate *J.A. I* and *J.A. II* pursuant to Federal Rule of Civil Procedure 42. Except as set forth herein, this case will proceed on the following counts:

> Count I: Constitutional Violations under 42 U.S.C. § 1983 against Defendant Abreu;
> Count II: Violation of Articles 24 and 26 of the Maryland Declaration of Rights against Defendant Abreu;
> Count III: Assault against Defendant Abreu;
> Count IV: Battery against Defendant Abreu;
> Count V: False Imprisonment against Defendant Abreu;
> Count VI: Intentional Infliction of Emotional Distress against Defendant Abreu;
> Count VII: Negligent Hiring, Training, and Retention against Defendants Lewis and the State;
> Count IX: *Longtin* Claim against Defendant State;
> Count X: Personal Supervisory Liability under 42 U.S.C. § 1983 against Defendant Lewis; and
> Count XI: Vicarious Liability against Defendant State.

September 14, 2026

/S/________________________________
Julie R. Rubin
United States District Judge

[34] The County seeks dismissal with prejudice. (ECF No. 14-1.) The court declines to dismiss it with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court").